SLR:BDM:TRP
F#: 2014V02159

FILED
CLERK

2016 SEP 19   AM 10: 18

U.S. ... ... COURT
E... ... ...TRICT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

                    Plaintiff,

          - against -

APPROXIMATELY TWO HUNDRED SIXTY-SIX
THOUSAND THREE HUNDRED SIXTY-NINE
DOLLARS AND NINETY-SIX CENTS IN UNITED
STATES CURRENCY ($266,369.96) SEIZED FROM
J.P. MORGAN CHASE BANK, N.A. ACCOUNT
NUMBER 3132422134 HELD IN THE NAME OF
RAFAEL FLORES, JR., AND ALL PROCEEDS
TRACEABLE THERETO; and

THE REAL PROPERTY AND PREMISES LOCATED
AT 336 CHELSEA AVENUE, DAVENPORT,
FLORIDA;

                    Defendants In Rem.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

VERIFIED
COMPLAINT IN REM

CV 16        5190

GARAUFIS, J.

MANN. M.J.

          Plaintiff, United States of America, by its attorney, ROBERT L. CAPERS, United

States Attorney for the Eastern District of New York, TANISHA R. PAYNE, Assistant United

States Attorney, of counsel, alleges upon information and belief as follows:

                         **PRELIMINARY STATEMENT**

          1.          This civil action seeks to forfeit and condemn to the use and benefit of the United

States the above-captioned Defendants in rem, described in further detail below, as well as all

proceeds traceable thereto, pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

## JURISDICTION AND VENUE

2.      This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3.      Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §§ 1355 and 1395, in that acts or omissions giving rise to the forfeiture occurred in the Eastern District of New York.

## DEFENDANTS IN REM

4.      The above-captioned defendant funds are comprised of approximately Two Hundred Sixty-Six Thousand Three Hundred Sixty-Nine dollars and zero cents ($266,369.96.00) seized from J.P. Morgan Chase Bank, N.A. account number 3132422134 held in the name of Rafael Flores, Jr. (the "Defendant Funds").  This action seeks to forfeit and condemn to the United States the Defendant Funds in accordance with (a) 21 U.S.C. § 881(a)(6), as moneys or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act (the "CSA"), and all proceeds traceable to such an exchange, and (b) 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a violation of the CSA, or a conspiracy to commit such offense.

5.      The above-captioned defendant property is comprised of the real property and premises located at 336 Chelsea Avenue, Davenport, Florida (the "Defendant Property").  This action seeks to forfeit and condemn to the United States the Defendant Property in accordance with (a) 21 U.S.C. § 881(a)(6), as proceeds traceable to an exchange of moneys or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the CSA, (b) 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a violation of the CSA, or a conspiracy to commit such offense.

2

## STATUTORY BACKGROUND

6.      Pursuant to 21 U.S.C. § 841(a)(1), "[i]t shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense or possess with intent to manufacture, distribute, or dispense, a controlled substance," except as authorized under the CSA.

7.      Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the CSA, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of the CSA are subject to forfeiture to the United States.

8.      Pursuant to 18 U.S.C. § 981(a)(1)(C), all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting specified unlawful activity, as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, is subject to forfeiture to the United States.

9.      Pursuant to 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1)(D), a violation of the CSA constitutes specified unlawful activity.

## THE INVESTIGATION

10.      Since in or around 2008, the Organized Crime Drug Enforcement Strike Force ("Strike Force"), has been investigating a cocaine and heroin trafficking organization involving Rafael Flores, Michael Soto and others. The Strike Force is comprised of federal, state, and local law enforcement officers, and its primary focus is conducting narcotics and money laundering investigations.    The investigation, which included the use of a confidential informant ("CI-1"), revealed that Flores was engaged in drug trafficking and money laundering activities since the 1990s and that Soto was an associate of Flores who was also involved in narcotics trafficking.

11.     On or about May 20, 2013, at the direction of agents, CI-1 met with Soto at a location in New York, New York.  This meeting was consensually recorded.  During this meeting, Soto informed CI-1 that Soto had been selling heroin and cocaine that was supplied by Flores for approximately seven years.

12.     On or about May 23, 2013, in the basement of Flores' Queens, New York residence, CI-1 met with Flores, Flores' nephew ("Remey"), and Flores' wife.  During the meeting, which was consensually recorded, Flores told CI-1 that Flores distributes three kilograms of heroin every two months.

13.     On or about May 24, 2013, Remey arrived at CI-1's residence and gave CI-1 40 glassines of heroin.  The heroin was stamped "Miami Vice."  Remey told CI-1 that Flores had instructed Remey to give CI-1 the heroin.

14.     On or about June 21, 2013, during a consensually recorded meeting at Soto's Brooklyn, New York residence, CI-1 purchased 99 bags of heroin from Soto.  This heroin was also stamped "Miami Vice."

15.     On or about July 10, 2013, CI-1 met Flores at Flores' residence. This meeting was consensually recorded.  During the meeting, Flores removed a digital scale from the kitchen cabinet and weighed a plastic bag containing a substance CI-1 believed to be cocaine.  CI-1 observed that the weight of the plastic bag was approximately 77 grams.  Flores provided Soto with the plastic bag and Soto provided Flores with United States currency as payment for the narcotics.  After Soto left, Flores and CI-1 further engaged in a conversation regarding the different people Flores was supplying with narcotics.

4

16.     On or about August 16, 2013, CI-1 went to Flores' residence in Queens, New York and met with Flores.   During the course of this meeting, which was consensually recorded, CI-1 and Flores discussed a future narcotics transaction.

17.     On or about April 9, 2014, officers with the New York City Police Department seized a quantity of heroin from Soto in New York, New York.   The heroin seized from Soto was stamped "Miami Vice."   Soto was placed under arrest.

## FLORES' MONEY LAUNDERING ACTIVITIES

18.     The investigation has revealed that Flores has engaged in extensive money laundering activities since 2007.   Flores' money laundering activities were facilitated through nominees, including Flores' relatives, friends and business entities that were controlled by Flores. The investigation revealed that J.P. Morgan Chase Bank, N.A. account number 3132422134, which is held in the name of Flores' son, Rafael Flores Jr. ("Flores. Jr.") (hereinafter, the "Subject Account"), was used by Flores as a nominee account for the purpose of depositing and laundering proceeds of his drug trafficking operation.

## THE SUBJECT ACCOUNT AND THE SEIZURE OF THE DEFENDANT FUNDS

19.     The investigation revealed that Flores made or caused to be made numerous cash deposits and transfers into the Subject Account to further his money laundering activities.   Some of the deposits were in the form of cash, in excess of $67,000, directly deposited into the Subject Account.   In addition, there were several wire transfers in excess of $300,000 made from accounts maintained by Flores at J.P. Morgan Chase Bank to the Subject Account.   For example, during the period in or about and between June 2013 and September 2013, Flores made or caused to be made cash deposits and a transfer from Flores' J.P. Morgan Chase Bank, N.A. checking account ("Flores

Chase Account #1465") into the Subject Account totaling approximately $135,594.04.  These deposits and transfers are set forth on the chart below.

| DATE OF TRANSACTION | CASH DEPOSIT AMOUNT | TRANSFER FROM ACCOUNT #1465 |
|---|---|---|
| | | |
| 06-04-13 | | $113,094.04 |
| 08-14-13 | $5,000.00 | |
| 09-06-13 | $9,500.00 | |
| 09-10-13 | $8,000.00 | |
| | | |
| TOTAL: | $22,500.00 | $113,094.04 |

20.    Based on a review of the bank records for the Subject Account, the Subject Account appears to have been created and used for the exclusive purpose of receiving deposits and transfers to help conceal and disguise the source of its funds.   The investigation has shown that Flores had no legitimate source of income traceable to the aforementioned funds deposited into the Subject Account, which represent the proceeds of his extensive drug trafficking activities, including as described above.

21.    On or about April 23, 2015, the Honorable Vera M. Scanlon, United States Magistrate Judge for the Eastern District of New York, issued a warrant authorizing the seizure of any and all funds on deposit in the Subject Account.   Pursuant to this warrant, on or about April 23, 2015, law enforcement agents seized approximately $266,369.96 in United States currency from the Subject Account.

THE DEFENDANT PROPERTY

22.    On or about February 2, 2007, Flores purchased the Defendant Property, which is located at 336 Chelsea Avenue Davenport, Florida, also designated as Lot 64, Chelsea Woods at Providence, according to the Plat thereof as recorded in Plat Book 132, Pages 3 through 7, Public

6

Records of Polk County, Florida, Parcel Identification Number: 27-26-13-704001-000640 (the "Florida Property").   The purchase price was approximately $650,000.

23.      In or around May 2013, Flores and CI-1 engaged in a consensually recorded conversation in which they discussed the Defendant Property.   During that conversation, Flores stated that he intended to allow the home to go into foreclosure.   Flores explained that "what I am going to do is, in two months, wait for the bank to list it, and I am going to buy it back.   And I am not going to have a mortgage; I am just going to pay for it."   CI-1 asked Flores, "But you get first dibs on it?"   Flores replied, "I could have first dibs but we don't want it like that because then they will investigate on where the money came from.   So, what I am going to do is I am going to have the boys buy it back and let them investigate them.   Ralph worked for a minute; he got money in the bank."

24.      In or around May 2013, the Defendant Property was foreclosed upon by IndyMac INDX Mortgage Trust.   On or about October 7, 2013, the Defendant Property was purchased for $360,000 by a business entity named 6054 55th ST, LLC.

25.      The purchase of the Defendant Property on or about October 7, 2013 was made by two wire transfers sent to a title company in Florida.   The first wire transfer, in the amount of approximately $215,000, was sent on or about October 1, 2013 from a bank account at J.P. Morgan Chase Bank in the name of 6054 55th ST, LLC (the "LLC Chase Bank Account").   The second wire transfer, in the amount of approximately $145,000, was sent on October 2, 2013 from a TD Bank account held in the name of Wilfredo Rodriguez (the "Rodriguez TD Bank Account").

26.      The investigation has revealed that Flores was the true owner of 6054 55th ST, LLC. Flores owns a rental property at 60-54 55th Street, Maspeth, Queens (the "Rental Property").   The Rental Property was purchased in or around 1998 under the name Jenise Nicole, Inc., a corporation

7

that lists Rafael Flores as the owner.   In or around 2012, the Rental Property was transferred to 6054 55th ST, LLC, which lists one of Flores's sons, Wilfredo Rodriguez, as the owner.   CI-1 also informed investigating agents that Flores transferred the Rental Property from Flores to Rodriguez.

27.     Bank records revealed that the first wire transfer, in the amount of approximately $215,000, sent from the LLC Chase Bank Account to pay for the Defendant Property, was funded primarily through either cash deposits made directly into the LLC Chase Bank Account, or from funds transferred from other accounts held in the name of Flores, Flores' entity Jenise Nicole, Inc. or Flores' associates.   Specifically, approximately $30,500 in cash deposits were made directly into the LLC Chase Bank Account.   Approximately $188,000 in cash, cashier's checks or money orders were deposited into bank accounts held in the name of either Flores, Flores' entity Jenise Nicole, Inc., or known associates of Flores.   The majority of the cash deposits were made between on or about September 9, 2013 and October 1, 2013, and were all under $10,000, the amount which would have required the completion of a Currency Transaction Report ("CTR") by the financial institution pursuant to 31 C.F.R. § 1010.311.   Those cash deposits were then sent via wire transfer or check to the LLC Chase Bank Account from the various accounts connected to Flores in the weeks leading up to the purchase of the Defendant Property.

28.     Bank records revealed that the second wire transfer, in the amount of $145,000, for the purchase of the Defendant Property, was funded through deposits made into the Rodriguez TD Bank Account ($55,000) and a bank account at Bank of America held in the name of Jasmine Flores, Flores' daughter (the "Jasmine BOA Account") ($90,000).   Of the $145,000 used to finance the wire transfer, more than $78,000 was from cash deposits made between September 16 and October 1, 2013 that were under $10,000.   The remainder came in the form of cash deposits

8

prior to September 16, 2013, also under $10,000, checks written by Jenise Nicole, Inc., a check written from Flores' personal bank account and numerous money orders.

29.      The Rodriguez TD Bank Account and the Jasmine BOA Account appear to have been created for the exclusive purpose of receiving deposits.   Both Wilfredo Rodriguez and Jasmine Flores have other bank accounts at TD Bank and Bank of America, respectively, than the ones used to facilitate the wire transfers.   Analysis of those accounts demonstrates that Wilfredo Rodriguez and Jasmine Flores used those bank accounts more frequently and the activity includes deposits from paychecks and debits for everyday expenditures.   In contrast, the accounts used to facilitate the wire transfer were primarily used for the large cash infusions under $10,000 and the subsequent transfers.

## THE FEDERAL INDICTMENT

30.      On or about April 21, 2015, a grand jury sitting in the Eastern District of New York returned an indictment charging Flores and Soto with conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(i) and 841(b)(1)(C); and charging Flores with money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i).

31.      Flores was arrested on or about April 22, 2015.

32.      On or about July 29, 2016, the indictment against Flores was dismissed due to Flores' death.

## FIRST CLAIM FOR RELIEF

33.      Plaintiff repeats the allegations of paragraphs 1 through 32 as if fully set forth herein.

34.      The Defendant Funds and the Defendant Property constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person

9

in exchange for a controlled substance or listed chemical in violation of the CSA, and/or proceeds traceable to such an exchange.

35.     As a result, the Defendant Funds and the Defendant Property are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

### SECOND CLAIM FOR RELIEF

36.     Plaintiff repeats the allegations of paragraphs 1 through 32 as if fully set forth herein.

37.     The Defendant Funds and the Defendant Property constitute or are derived from proceeds traceable to a violation of the CSA, or a conspiracy to commit such offense.

38.     As a result, the Defendant Funds and the Defendant Property are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, Plaintiff requests that a warrant of this Court be issued for the arrest of the Defendant Funds; that due notice of these proceedings be given to all interested persons; that the Defendants in rem be forfeited and condemned to the use of the United States of America; that the Plaintiff be awarded its costs and disbursements in this action; and for such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
        September 16, 2016

                                    ROBERT L. CAPERS
                                    UNITED STATES ATTORNEY
                                    Attorney for Plaintiff
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

                        By:    _Tanisha Payne_____
                               Tanisha R. Payne
                               Assistant United States Attorney
                               (718) 254-6358

11

## VERIFICATION

1.      I am a Special Agent with the United States Internal Revenue Service

Criminal Investigative Division ("IRS-CI") in the New York Field Office and, as such, have

knowledge of the facts underlying this action.

2.      I have read the within verified complaint in rem and know the contents

thereof.

3.      The matters contained in the within verified complaint in rem are true and

accurate to the best of my knowledge, information and belief.

4.      The source of my information and the grounds for my belief are my

personal knowledge, information provided by other law enforcement officers, and the official files

and records of the Internal Revenue Service and other law enforcement agencies.

I declare under penalty of perjury that the foregoing is true, to the best of my

knowledge, information, and belief.

Dated: Brooklyn, New York
        September 16, 2016


                                        _____
                                        SERGIO SOBOLEV
                                        Special Agent
                                        Internal Revenue Service